### PETER WILSON v. ELIJAH OLDFIELD.

Court of Common Pleas. Kent. May, 1818.

*Clayton's Notebook, 169.*

*Hall* for appellant. Our first ground is founded upon this, that the Act of January 24, 1810 (commonly called the trespass law), which gives to justices of the peace a jurisdiction over cases of trespass *vi et armis,* where the damages sustained do not exceed thirty-two dollars in value, directly contravenes the fourth section of the first Article of the Constitution, which declares that "trials by jury shall be as heretofore."

The only doubt that ever could have been raised on this question is whether this or any other court has the right of declaring an Act of the legislative department unconstitutional and void; and this we take to be perfectly settled at this day in the affirmative. The judiciary of Pennsylvania, as subservient as it is to the legislature, has asserted this right, even while supporting an infraction of their Constitution similar to the one now under consideration. The simple question, then, whether the Act of January 24, 1810, is or is not a violation of the Constitution presents itself to the Court, and the decision will depend entirely upon the construction which shall be put upon the provision that "trials by jury shall be as heretofore." The obvious and only rational meaning that can be attached to this provision is that trials by jury shall be secured to the people in all cases, both civil and criminal, in which they were entitled to them at the time of the adoption of the Constitution. The convention

recognized all previous acts of assembly which had introduced summary jurisdictions in particular cases, and then closed the door against the future introduction of them. The manner in which the provision is introduced shows that it was intended to secure some important privilege. It therefore never could have been the intention of the convention merely to provide that the constitution of juries should be as heretofore, because such a provision would be perfectly nugatory; for the trial by jury itself might be entirely taken away, and yet the constitution of juries remain inviolate. The General Assembly might, for instance, extend the jurisdiction of justices of the peace to all causes of action indefinitely and might declare the judgments rendered before them final and conclusive upon the parties; thus would the trial by jury be in effect abolished, while the constitution of juries would remain as heretofore. A construction leading to such an absurd conclusion can never be adopted by this Court, but will be at once rejected by them, and the more especially when it is considered that the Constitution is express that "trial by jury shall be as heretofore," plainly intending to secure both the form and the substance, the trial and the constitution of the jury.

The Constitution cannot be construed to relate in the fourth section to criminal cases alone: first, because the provision is given, as it ought to be, where the intention was to include civil actions as criminal prosecutions; secondly, because had such been the intention, the convention would have said so in express terms and not have used an expression applicable to both descriptions of cases; thirdly, because the seventh section of the same article provides for criminal cases; and these reasons are further strengthened by the consideration that trial by jury is an important privilege even in civil causes. When we consider that a jury is composed of honest freeholders of the county, that either party may challenge the array if there is any improper conduct in the returning officer, or any good reason to show him interested or prejudiced, or that he may challenge any individual of the jury if he can show any ground of partiality in the individual, and three jurors without assigning any reason, that an upright and impartial jury of the peers of the parties is thus secured, that the trial is conducted openly in the face of the county, that the testimony of the witnesses is given in the same open manner in the presence of the parties, and that every member of the jury must concur in the verdict, we surely cannot hesitate to declare that the trial by jury is in civil causes a privilege of primary importance and well worthy of being secured by the Constitution and the supreme law of the land. And

the framers of the Constitution of 1776 were aware of that importance, when they declared (1 Del.Laws, Appendix 81) it to be a fundamental rule "that trial by jury of facts where they arise is one of the greatest securities of the lives, liberties and estates of the people." The provision in the present Constitution is stronger and more positive, "Trials by jury shall be as heretofore."

It is true, the courts in Pennsylvania, the Constitution of which state contains a provision similar to that in our own, have supported by their decisions laws of that state extending the jurisdiction of justices of the peace, 1 Binn. 416. But the opinions of the judges, as reported by Binney, evidence real sentiments very different from such as ought to lead to a decision establishing the constitutionality of the extension. It is very evident that the judgment of the Court was rather extorted by their fears than by a conviction of its correctness.

But whether the Act of 1810 is constitutional or not, yet judgment ought in this case to be arrested, for no proceedings whatever are directed by that Act, but it declares that the same proceedings shall be observed and had in conducting suits under it as are directed by the Act (2 Del.Laws 1041) of February 4, 1792, in suits brought under that Act, and "saving always to either party an appeal, as in the said Act is provided," and the latter Act being repealed by the Act [of] February, 1818, (5 Del.Laws [335]) no proceedings can now be had in any case arising under the former.

*Hayes,* for respondent. We do not deny that this Court has the power to pronounce a law void which violates the Constitution, and we admit that in this case it has authority to decide that the Act in question is unconstitutional, if that should be its opinion. The position comprised in the first cause of arrest on the part of the appellant is that the Act of 1810 entitled, "A supplement to the Act entitled 'An Act for the more easy and speedy recovery of small debts,'" by extending the jurisdiction of justices of the peace to subjects which at the adoption of the Constitution could only be tried by a jury, violates the fourth section of the first article of the Constitution, which declares that "trial by jury shall be as heretofore." The construction by which the counsel for the appellant has attempted to support this position, we contend is erroneous.

Justices of the peace are, in common with the Court of Common Pleas, Supreme Court, etc., vested with the judicial power of the State by the sixth article of the Constitution. And if it had

been the intention to limit or restrict their jurisdiction, it is here the limitation or restriction would have been expressed; yet neither in this article nor any other part of the Constitution is there any such express limitation or restriction, either as to the subject or the amount of matters cognizable before them. The same reasoning which is urged, on the part of the appellant, against the Act in question is equally applicable to the "Act respecting the partition of lands and tenements among joint tenants and tenants in common" and the "Act respecting devises of lands, joint estates and dower," passed in 1816, both of which reduce within the cognizance of the Chancellor, subjects that were before only triable by a jury, and both of which have stood unquestioned.

The fourth section of the first article refers not to any particular point of time, but to a past period having no definite commencement. It relates as well to the Act of the 13th Geo. II (1740), for determining debts under forty shillings as to that of 1792, which extended the jurisdiction of justices of the peace from debts under forty shillings to debts and demands under £12. Were this section of the Constitution applicable therefore to the jurisdiction of justices of the peace, it would appear from this general relation of the term "as heretofore" to authorize any extension of that jurisdiction. But surely if it had been the intention to confine the jurisdiction to the subjects and amount cognizable before the justices of the peace at the adoption of the Constitution, the convention would have used a term pointing to the jurisdiction as it then existed, and not one which equally relates to it when it extended to debts and demands under £12, under forty shillings, and when it extended to no civil case whatever.

A comparison of the Constitution or System of Government and Declaration of Rights of 1776 with the present Constitution will convince any one, if a doubt exists on the subject, that the Convention of 1792 had the old Constitution before them and made it in fact the groundwork of their labors; for many of its most important provisions are inserted in the present Constitution without the slightest variation even of the expressions, while other principles of the old system are adopted in language differing but little in its terms, and bearing precisely the same purport. The fourteenth section of the Declaration of Rights is made the seventh section of first article of the present Constitution, with this important exception, that it is not provided in the latter, as in the former, that no person shall be found guilty without the unanimous consent of an impartial jury. But are we therefore to suppose that it was intended to vest the legis-

lature with the power of enacting that a person accused of a criminal offense might be convicted upon the finding of a majority of a jury? By no means. It was considered that this principle was secured by the fourth section, which says that "trial by jury shall be as heretofore," and a repetition of it was deemed unnecessary.

Admitting then that this section applies as well to civil as to criminal cases, we say that its object is, in the first place, to preserve this trial in relation to the mode of summoning the jury, their number, the challenge, the oath and all other material circumstances appertaining to the trial by jury as it exists now and has always existed heretofore; and, in the second place, to secure to the community this species of trial "of facts where they arise" which is declared in the Declaration of Rights to be "one of the greatest securities of the lives, liberties and estates of the people." Does the Act in question alter, change, or affect any of these circumstances appertaining to the trial by jury? Does it deprive any man of the trial by jury, or infringe in the slightest degree this great "security of the lives, liberties, and estates of the people"? This Act gives each party an appeal in all cases and enables him, in fact, to obtain a trial by jury more speedily than in the ordinary course of proceedings, where the action is, in the first instance, commenced in this Court. So far, therefore, from creating any obstruction or impediment, it helps the party to a more speedy "trial by jury of facts where they arise," than he would otherwise have, and as it neither affects any circumstance belonging to the form of the trial nor the security which this trial affords to "the lives, liberties and estates of the people," the conclusion we think is inevitable that it does not violate the fourth section of the first article of the Constitution, which provides that "trial by jury shall be as heretofore."

And if this conclusion needed support, it is strongly fortified by the consideration that the "Act for the more easy and speedy recovery of small debts" has always been considered constitutional and valid, although passed under the Constitution of 1776 and the Declaration of Rights, no article of which, that Constitution declares (see Article 30) "ought ever to be violated on any pretence whatever." The conclusion is also fortified by a decision in the Supreme Court of Pennsylvania in the case of [*Emerick v. Harris*,] 1 Binn. 416. The Constitution of that Commonwealth, adopted in 1790, contains the following clause Art. 9, s. 6, "The trial by jury shall be as heretofore and the right thereof remain inviolate." On April 19, 1794, the legislature of that state passed an Act extending the jurisdiction of justices of the peace from £10 to £20; and the question being made in the case

before mentioned, the whole Court were of opinion that the Act did not violate that clause of the Constitution.

As to the second and last clause of arrest, it is perfectly clear that it was not the intention of the legislature by the Act of 1818 "for the more easy and speedy recovery of small debts" to repeal the Act of 1810 in question, because the thirtieth section of the former Act declares the latter to be in full force and effect. Independently of this express declaration of the will of the legislature, we think it equally clear that the repeal [5 Del.Laws 335] of the Act of 1792 [2 Del.Laws 1041] "for the more easy and speedy recovery of small debts" cannot operate as a repeal of the provisions of the Act of 1810 [4 Del.Laws 310], entitled "A supplement to the Act entitled 'An Act for the more easy and speedy recovery of small debts.'" This Act, by declaring that "the same forms of proceeding shall be observed and had in conducting and carrying on the said actions to judgment and in issuing execution and in executing and returning the same, as are directed by the Act to which this is a supplement and as if the said actions had been made cognizable thereby," adopts so much of the original Act by reference as is necessary to effectuate its intention; and just so much of the original Act, *quoad hoc,* stands unrepealed and in full force as a part of this supplement and as incorporated with it. The essential error of the argument on the part of the appellant is that it supposes the proceedings below in this case were had by virtue of the original Act of 1792, which is not true; for the whole case was conducted through all its stages until it was brought into this Court, [under] [2] the Supplementary Act of 1810.

BY THE COURT. We consider the proceedings under the Act of 1810 before justices of the peace as merely introductory to proceedings in this court. The constitutional provision is not impaired by such preliminary proceedings, for the parties have under the Act and the additional supplement (5 Del.Laws 92) free recourse to trial by jury, if they choose to take an appeal to this court. There is nothing in the second ground for arrest of judgment, for the reference to the mode of proceedings prescribed by the Act of 1792, and the direction that the same shall be observed, is tantamount to the insertion and re-enactment of the provisions prescribing those proceedings.

So the appellant took nothing by his motion.

---

[2] Illegible in manuscript.

## Queries [by Clayton].

1. Whether the right of establishing an antecedent jurisdiction does not in effect remove the constitutional barrier of a jury trial, for if one jurisdiction proceeding without trial by jury is constitutional, twenty successive appellate jurisdictions proceeding in the same summary manner might be established, and a jury be thus placed at such an immeasurable distance as effectually to preclude a resort to it.

2. Whether the twelfth section of the Act of 1818 does not render that Act unconstitutional, for it denies the right of appeal in an event which may happen in every case that can arise under it. Can a law be constitutional which is not so under every possible circumstance? Can the Act be said to be valid if perchance there are no referees appointed, or if they are appointed and happen to award more to the plaintiff than $15.00? And can the same law be declared void in the event of referees being appointed and of their awarding less than $15.00 to the plaintiff? Can the peculiar circumstances of the case provided for by the Act make it void and the same Act be valid as to the same case under other circumstances, when the peculiar circumstances rendering it void may happen in every case that can arise under the Act?